FILED & ENTERED

FEB 16 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

**<ins>NOT FOR PUBLICATION</ins>**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:11-bk-53845-RK |
| C & M RUSSELL, LLC, | Chapter 11 |
| Debtor. | Adv. No. 2:16-ap-01577-RK |
| | **STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| MATTIE BELINDA EVANS, an individual Chief Executive Manager as Real Party in Interest for C & M RUSSELL, LLC, and Trustee of Mattie B. Evans Family Trust, | |
| Plaintiff, | Date:    January 10, 2018 |
| | Time:    2:00 p.m. |
| vs. | Place:   U.S. Bankruptcy Court |
| | Courtroom 1675 |
| ALAN G. TIPPIE, an individual, attorney for **SULMEYER**KUPETZ, a professional corporation, and DOES 1 through 100, inclusive, | 255 East Temple Street |
| | Los Angeles, CA 90012 |
| Defendants. | |

This adversary proceeding came on for hearing on January 10, 2018 before the

undersigned United States Bankruptcy Judge on the Motion of Defendants' Alan G.

Tippie ("Tippie") and SulmeyerKupetz, a professional corporation (collectively,

"Defendants") for Summary Judgment on Complaint For Damages For:  1. Legal

Malpractice; 2. Intentional And Negligent Misrepresentation; 3. Breach Of The Implied

Covenant Of Good Faith And Fair Dealings; 4. Breach Of Fiduciary Duty; 5. Civil

Conspiracy; 6. Racism; 7. Fraud & Fraudulent Inducement; 8. Intentional And Negligent

Infliction Of Emotional Distress; Memorandum Of Points And Authorities (the "Motion")

[Docket No. 56], filed on November 29, 2017.  David J. Richardson, of the law firm of

SulmeyerKupetz, appeared for Defendants.  Plaintiff Mattie Belinda Evans, who is a

self-represented party, appeared for herself.

After consideration of all pleadings and papers filed in support of and in

opposition to the Motion, and the arguments of the parties at the hearing on January 10,

2018, the court hereby issues the following Statement of Uncontroverted Facts and

Conclusions of Law.

## UNCONTROVERTED FACTS

1.      Plaintiff's Complaint pending in this adversary proceeding based on

removal was originally filed by Plaintiff on November 29, 2016 in the Superior Court of

the State of California for the County of Los Angeles in Case Number BC642079.

[Declaration of Alan G. Tippie (hereinafter "AGTD")[Docket Number 56], ¶5, Exhibit 1

thereto, caption page]; [Notice of Removal of Action to United States Bankruptcy Court,

Docket Number 1].

2.      In the Complaint, Plaintiff seeks damages against Tippie and the law firm

of SulmeyerKupetz, a professional corporation, of which Tippie is an employee.  [AGTD,

¶5, Exhibit 1 thereto, caption page and prayer, page 15 thereof].

3.      While SulmeyerKupetz is not identified as a Defendant in the caption of

the Complaint, the law firm is named as a defendant in paragraph 10 on page 4 thereof.

[AGTD, ¶5, Exhibit 1 thereto, page 4, paragraph 10 thereof].

4.      Service of the Complaint on Defendants was made on December 13,

2016.  [AGTD, ¶7].

5.      The claims of Plaintiff's Complaint are entirely based on allegations

relating to the services of Defendants performed as legal counsel representing a

Chapter 11 bankruptcy debtor, C & M Russell, LLC (C & M) – not a plaintiff in this action, in its bankruptcy case filed in this court.  [AGTD, ¶12, and ¶5, Exhibit 1 thereto, generally]  Defendants have never represented Plaintiff, have never provided legal advice to her, and have never received any compensation of any sort from her.  [AGTD, ¶12].

6.      This Chapter 11 bankruptcy case of C & M was pending from the date of the filing of the bankruptcy petition on October 20, 2011 to October 4, 2012 when this court entered an order granting a motion filed by C & M to dismiss.  [AGTD, ¶16, Exhibits 8 (caption page showing filing date) and 9 thereto (caption page showing entry date, and page 2, ¶2)].

7.      In the order of dismissal of this Chapter 11 bankruptcy case of C & M, the court specifically retained jurisdiction to hear and determine applications for compensation for services rendered by professionals employed by order of the Bankruptcy Court, including Defendants.  [AGTD, ¶17, Exhibit 9 thereto, page 4, ¶6].

8.      By order of the Bankruptcy Court, Defendant SulmeyerKupetz prepared its Amended Second and Final Fee Application ("Application") and filed it with the court on November 14, 2012.  [AGTD, ¶18, Exhibit 10 thereto].

9.      In the Application, Defendant SulmeyerKupetz sought approval of compensation for services rendered from May 1, 2012 through November 13, 2012, and confirmation of the prior approval of an earlier application covering the period from commencement of the case through April 30, 2012.  [AGTD, ¶19, Exhibit 10 thereto, page 27, Section VII thereof].

10.     Plaintiff submitted a declaration under penalty of perjury in support of the Application, confirming that she has "reviewed the Second and Final Fee Application … that [she has] no objections to the Second and Final Fee Application and ask[s] that all professional fees and costs requested therein be granted in full."  [AGTD, ¶20, Exhibit 11 thereto, page 2, ¶2 thereof].

11.     Following a hearing on December 4, 2012, the court entered an order

approving the Application "in its entirety" and ordered C & M "to make payment to Applicant for all amounts allowed by this Order."  [AGTD, ¶21, Exhibit 12 thereto, page 2, ¶1, and page 3, ¶3 thereof].

12.    Plaintiff concedes that her "Verified Complaint for Damages arises out of actions and lack of actions that began on October 5, 2011" but further contends that such actions and lack of actions "overlaps and continues through the present time." [AGTD, ¶22, Exhibit 1 thereto, ¶2 thereof].

13.    Despite Plaintiff's allegations that the conduct of Defendants of which she complains was ongoing, she does not allege in the Complaint any relationship, actions, or conduct post dismissal of the Chapter 11 bankruptcy case of C & M that support any of her claims.  [AGTD, ¶23, and Exhibit 1 thereto, generally].

14.    While paragraph 4 of the Complaint refers to an action pending in the Superior Court, Plaintiff does not allege that Defendants were retained by Plaintiff or any other party in connection with that action, nor are there any allegations in the remainder of the Complaint that purport to describe the conduct of Defendants pertaining to that action.  [AGTD, ¶24].

15.    Defendants did not represent any party and otherwise had nothing to do with the referenced state court proceeding as is evidenced by the public court records which reflect no involvement whatsoever by Defendants.  [AGTD, ¶25, and Exhibit 13 thereto, page 1 under "Parties"]  Defendants had no involvement whatsoever in the state court action.  In that action, Plaintiff was represented by George L. Mallory, Jr., and C & M Russell, LLC was represented by Ivie, McNeill & Wyatt.  [AGTD, ¶25, and Exhibit 13 thereto, page 1 under "Parties"].

16.    The services of Defendants as legal counsel to C & M terminated on dismissal of the Chapter 11 bankruptcy case on October 4, 2012.  [AGTD, ¶26, and Exhibit 9 thereto, caption page].

17.    In the second full paragraph under numbered paragraph 12 of the Complaint, Plaintiff claims she was authorized on behalf of C & M to retain the services

of "ALAN G. TIPPIE and Associates", followed by paragraph 14 where she identifies the retainer agreement ("Retainer Agreement") that was executed "for the purpose of representing C&M RUSSELL, LLC in a Chapter 11 Petition for Reorganization Plan." [AGTD, ¶5, Exhibit 1 thereto, page 4, ¶12, and page 5, ¶14 thereof, and ¶29 of AGTD].

18.     In paragraph 15 of the Complaint, Plaintiff claims that the Retainer Agreement gave rise to a duty of care in favor of Plaintiff, and describes the agreement as one between "Plaintiffs [sic] and Defendants".  [AGTD, ¶30, and Exhibit 1 thereto, ¶15].

19.     The Retainer Agreement, a letter agreement dated October 5, 2011, represents the retention of SulmeyerKupetz and no other party by C & M Russell, LLC, and not by Plaintiff.  [AGTD, ¶31, and Exhibit 1 thereto, Exhibit C thereto, page 1, paragraph one, and page 4, third full paragraph].

20.     The Retainer Agreement specifically recites that "SulmeyerKupetz is being engaged by the LLC and only the LLC.  Our employment does not include representation of any other entity or person, including but not limited to the individual members of the LLC."  [AGTD, ¶32, and Exhibit 1 thereto, Exhibit C thereto, page 4, third full paragraph].

21.     The representation by SulmeyerKupetz of C & M and not Plaintiff is furthermore evidenced by Plaintiff's Exhibit F to the Complaint, where representation of the limited liability company and no other party is recited on the first page of the transcript.  [AGTD, ¶33, and Exhibit 1 thereto, Exhibit F thereto, page ii, under "Appearances"].

22.     Paragraphs 17 through 27 of the Complaint generally allege a failure of Defendants to perform their alleged duty of care, found in allegations that simply state that the business decisions implemented in the Chapter 11 bankruptcy case of C & M to sell the real estate assets of the bankruptcy estate of C & M (each of which is supported by a declaration of Plaintiff authorizing and supporting the actions), were "disadvantageous and caused Plaintiff financial damage."  [AGTD, ¶34, and Exhibit 1

1   thereto, ¶¶17 through 27].

2      23.   The Retainer Agreement specifically states that "as part of any plan to exit
3   chapter 11, the LLC must be prepared to either borrow additional monies (hopefully at a
4   more favorable rate and terms that [sic] [i.e., than] the current junior lienholders) or sell
5   real property to raise cash.  You have informed me that the LLC is prepared to take
6   whichever step is necessary to successfully emerge from chapter 11."  [AGTD, ¶36, and
7   Exhibit 1 thereto, Exhibit C thereto, page 4, first full paragraph].

8      24.   The liquidation of the assets of which Plaintiff complains was done with
9   the approval of C & M supported by declarations of Plaintiff, and in the sales which were
10  approved by this Court.  [AGTD, ¶¶37-44, and Exhibits 15, 16, and 19 thereto, and
11  Docket Nos. 124 and 126, specifically Declarations of Mattie Evans included therein,
12  and Exhibit 17, and Docket Nos. 168, 169 and 170, being orders approving the sales].

13     25.   In declarations submitted to the Court under penalty of perjury, Plaintiff
14  testified that she fully supported retention of a broker to market the Estate's real
15  properties for sale, and the ultimate sales of those properties, as the "net revenue
16  derived from these properties is, and likely will continue to be, insufficient to service the
17  debt presently encumbering the properties."  [AGTD, ¶37, and Exhibits 14, p. 2, lines
18  18-20, and AGTD, ¶42, and Exhibit 18 thereto].  Plaintiff further attested that "the sale of
19  the Properties would effectuate my and the other members' desires to no longer own
20  and operate multi-family residential real estate."  [AGTD, ¶43, and Exhibit 19, page 31,
21  ¶19, lines 16-17].

22     26.   Plaintiff contends that Defendants should not have given credence to the
23  claims asserted by Brent Barnes because Defendants "knew or should have known …
24  Brent Barnes was not a creditor."  [AGTD, ¶45, and Exhibit 1 thereto, specifically page
25  8, ¶25, lines 4-6].  The Court finds that Plaintiff did not mean to refer to Brent Barnes as
26  a creditor.  Instead, by Plaintiff's reference to Exhibit G to the Complaint, she meant to
27  refer to Vearl Sneed Family Properties, Inc. and Homer Blomberg, the parties that Mr.
28  Barnes represented.  [AGTD, ¶¶45 and 46, and Exhibit 1 thereto, Exhibit G thereto].

27.     Vearl Sneed Family Properties, Inc. ("VSFP") filed a claim for $7,212,416.00 in this case on March 29, 2012.  [AGTD, ¶46, and Exhibit 1 thereto, exhibit G thereto].  This proof of claim (to which no objection was ever filed) raises the claimant to the level of a creditor under bankruptcy law.  11 U.S.C. §101(10).  [AGTD, ¶46].

28.     Nearly two months after Plaintiff claims that Defendants reached an improper agreement with counsel to a creditor in the Case, Plaintiff signed a declaration to support compensation for the services of Defendants of which she now complains.  [AGTD, ¶48, and Exhibit 11 thereto, page 2, ¶2].

29.     Next, Plaintiff complains that, post-dismissal, Defendants did not make payments to her, and later claims [Complaint, 6th Cause of Action] that the conduct of Defendants amounted to racism because she and her sons, Kevin McDowell and Ezell McDowell, are black.  [AGTD, ¶49, and Exhibit 1 thereto, pages 11-13, and ¶¶59-66].

30.     Despite the claims of racism, Plaintiff fails to identify a single instance in which race was a factor, or claim that the actions taken by Defendants were done without client instructions or court approval.  [AGTD, ¶50, and Exhibit 1 thereto, pages 11-13, ¶¶59-66].

31.     Plaintiff complains that she was denied compensation post dismissal, and that Defendants withheld payments to which she was entitled.  [AGTD, ¶51, and Exhibit 1 thereto, pages 8-9, ¶¶28-31].

32.     The court order of dismissal of this Chapter 11 bankruptcy case of C & M that directed the conduct of Defendants post dismissal specifically prohibited the payments of which Plaintiff complains.  As the Order instructed:  "no further amounts shall be paid from the Client Account (i) to Mattie Evans, to Legal Connection, or to any other entity owned or operated by Mattie Evans; (ii) to Kevin McDowell; or (iii) to Ezell McDowell."  [AGTD, ¶51, and Exhibit 9 thereto, page 4, ¶5 thereof].

33.     In paragraphs 28 and 31 of the Complaint, Plaintiff states that Defendants did not release funds in a Client Account until February 19, 2016, and contends that

1   disbursement at this time was in violation of the Bankruptcy Court dismissal order.

2   [AGTD, ¶52, and Exhibit 1 thereto, pages 8-9, ¶¶28 and 31 thereof].

3      34.   The Dismissal Order provides that the funds in trust were to "remain in the

4   Client Account until resolution of the State Court Action."  [AGTD, ¶53, and Exhibit 9

5   thereto, page 3, ¶5 thereof]  Resolution of the State Court Action was accomplished by

6   entry of a Judgment in that action, which entry was effectuated on February 8, 2016.

7   [AGTD, ¶53, and Exhibit 13 thereto, page 2 thereof, under docket entry on February 8,

8   2016]  Eleven days thereafter the disbursement by Defendants was made.  [AGTD,

9   ¶53].

10      35.   Disbursement by Defendants of the funds in the Client Account was timely

11   and complied with the Dismissal Order.  [AGTD, ¶53, and Exhibit 9 thereto, page 3, ¶5

12   thereof; Exhibit 13 thereto, page 2 thereof, under docket entry on February 8, 2016].

13      36.   Plaintiff contends that she is the assignee of rights and interests in and to

14   C & M Russell, LLC.  [AGTD, ¶5, and Exhibit 1 thereto, ¶7, lines 14-18, and Exhibit A

15   thereto].  The assignment effectuated by the Assignment of Membership Interest is an

16   assignment of membership or ownership interests previously held by Christina A.

17   Russell and Matthew C. Russell, and is not an assignment of any rights or interests

18   owned or held by the limited liability company in which the membership interests were

19   maintained.  [AGTD, ¶5, and Exhibit 1 thereto, exhibit A thereto, page 1, introductory

20   paragraph showing parties to agreement, second recital defining "Assigned Interest",

21   and ¶1 reflecting property rights assigned].

22      37.   Plaintiff's Statement of Disputed Facts and Conclusions of Law in

23   Opposition to Defendants' Second Motion for Summary Judgment, filed on December

24   27, 2017 [Docket Number 63] do not raise genuine issues of material fact to controvert

25   the uncontroverted facts recited above because Plaintiff's alleged disputed facts are

26   essentially legal arguments in opposition to the motion and factual assertions not

27   supported by the evidence.

28

**CONCLUSIONS OF LAW**

38.    This court has jurisdiction over this adversary proceeding pursuant to 28

U.S.C. §§ 157(b)(2)(A), 1334 and 1452(a) since this adversary proceeding is a

proceeding removed from state court involving administration of the bankruptcy estate

because the claims in Plaintiff's action are based on alleged acts of malpractice of

Defendants as Chapter 11 bankruptcy counsel for C & M in this case.   *See Schultze v.*

*Chandler*, 765 F.3d 945, 948-950 (9th Cir. 2014).

39.    Because the claims in Plaintiff's action are based on alleged acts of

malpractice of Defendants as Chapter 11 bankruptcy counsel for C & M in this case,

Plaintiff's claims are dependent on Plaintiff demonstrating the existence of an attorney

client relationship between her and Defendants.

40.    Plaintiff lacks standing to assert any claims against Defendants that

require the existence of an attorney client relationship because the uncontroverted facts

show that she did not have an attorney client relationship with Defendants.

41.    Plaintiff alleges that she is a party to the Retainer Agreement, and that by

reason thereof, Defendants owed to Plaintiff a duty of care [See Complaint, ¶15].

Plaintiff is not a party to the Retainer Agreement, and there is no attorney client

relationship between Plaintiff and either of the Defendants.  The uncontroverted

evidence shows that the parties to the Retainer Agreement were C & M and Defendant

SulmeyerKupetz.  Although Plaintiff had involvement in C & M, it is a separate legal

entity from her.

42.    There was and is no relationship between Plaintiff and either of the

Defendants which might give rise to a duty of care or a contractual relationship.  Since

the first, second, third, fourth, and fifth causes of action require as an essential element

a fiduciary relationship which might give rise to a duty of care or the existence of a

contract between Plaintiff and Defendants, and none exists, Plaintiff lacks the legal

capacity to sue Defendants for such claims.

43.    The claims asserted by Plaintiff in the Complaint are barred by the

1 | principle of *res judicata*.  "The doctrine of res judicata bars a party from bringing a claim

2 | if a court of competent jurisdiction has rendered final judgment on the merits of the

3 | claim in a previous action involving the same parties or their privies."  *In re International*

4 | *Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994)(citation omitted), *cited and quoted in*, *In*

5 | *re Leisure Corp.*, 2007 WL 607696, slip op. at *8 (N.D. Cal. 2007).

6 | 44.    "Res judicata, or claim preclusion, prevents the relitigation of a claim

7 | previously tried and decided. Collateral estoppel, or issue preclusion, bars the

8 | relitigation of issues actually adjudicated in previous litigation between the same

9 | parties."  *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992)(citation

10 | omitted), *cited and quoted in*, *In re Leisure Corp.,* 2007 WL 607696, slip op. at *8.  "Res

11 | judicata bars all grounds for recovery which could have been asserted, whether they

12 | were or not, in a prior suit between the same parties on the same cause of action." *Id*.

13 | "In determining whether successive lawsuits involve the same cause of action," a court

14 | must consider: "(1) whether rights or interests established in the prior judgment would

15 | be destroyed or impaired by prosecution of the second action; (2) whether substantially

16 | the same evidence is presented in the two actions; (3) whether the two suits involve

17 | infringement of the same right; and (4) whether the two suits arise out of the same

18 | transactional nucleus of facts."  *Id*.

19 | 45.    "The elements of issue preclusion are: (1) the issue decided in the prior

20 | adjudication is substantially identical to the issue in the subsequent action; (2) there was

21 | a final judgment on the merits; and (3) the party against whom the estoppel is asserted

22 | was a party to or in privity with a party in the first action."  *Dunkin v. Shea & Gould*, 92

23 | F.3d 1510, 1516 (9th Cir. 1996)(citation omitted), *cited and quoted in*, *In re Leisure*

24 | *Corp.,* 2007 WL 607696, slip op. at *8.

25 | 46.    "[S]pecial circumstances-such as reason to doubt the quality,

26 | extensiveness, or fairness of procedures followed in prior litigation-may warrant an

27 | exception to the normal rules of preclusion."  *Dunkin v. Shea & Gould*, 92 F.3d at 1515

28 | (citations and internal quotation marks omitted), *cited and quoted in*, *In re Leisure Corp.*,

1   2007 WL 607696, slip op. at *9.  "In short, the parties must have had a full and fair

2   opportunity to litigate." *Id.* (quotation marks omitted).

3       47.    "The party seeking to establish preclusion has the burden of proof of all

4   elements, including that no exception applies."  *In re Associated Vintage Group, Inc.*,

5   283 B.R. 549, 562 (9th Cir. BAP 2002), *citing*, *Shapley v. Nevada Board of State Prison*

6   *Commissioners*, 766 F.2d 404, 407-408 (9th Cir. 1985), *cited and quoted in*, *In re*

7   *Leisure Corp.*, 2007 WL 607696, slip op. at *9.  "Doubts are resolved against

8   preclusion." *Id.*, *citing*, *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980), *cited and*

9   *quoted in*, *In re Leisure Corp.,* 2007 WL 607696, slip op. at *9.

10      48.    Plaintiff's claims for relief are all admittedly based upon the services that

11  were provided by Defendants to C & M that preceded the entry of the order approving

12  the fees and services of Defendants.  Plaintiff had signed and submitted her personal

13  declaration in support of the Defendants' application for compensation as attorneys for

14  C & M in this bankruptcy case, therefore any issue as to the services rendered are

15  merged in the order approving the fees for such services.  Because the undisputed facts

16  show that if C & M had any objection to Defendants' fees before they were approved, it

17  had sufficient opportunity to object to them, and because the court's order approving

18  Defendants' final fee application was a final adjudication of the fees owed to

19  Defendants, the court agrees that *res judicata* is properly applied to bar any claims of C

20  & M and anyone like Plaintiff asserting claims through it for legal malpractice and

21  breach of fiduciary duty.

22      49.    Although the Ninth Circuit has not ruled on the issue, other courts have

23  held that when a professional employed in a Chapter 11 or Chapter 7 bankruptcy case

24  files a final application for approval of its fees and expenses, and the Bankruptcy Court

25  enters an order approving such fees and expenses, such order serves to preclude any

26  and all claims that were or could have been raised in objection to the professional's fees

27  or the manner in which the professional carried out (or allegedly failed to carry out) its

28  duties, including the very types of claims that Plaintiff has asserted in the Complaint.

1  *Grausz v. Englander*, 321 F.3d 467, 472-474 (4th Cir. 2003)(the bankruptcy court's final

2  fee order is a final judgment on the merits which bars any future claims for legal

3  malpractice which could have been raised in opposition to the final fee application);

4  *Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.),* 200 F.3d 382, 391 (5th Cir.

5  2000) (holding that a general awareness of background facts giving rise to potential

6  malpractice claims at the time of a final fee application bar later assertion of such claims

7  against accountants for bankruptcy estate by order approving fee application under

8  doctrine of *res judicata*); *In re Iannochino*, 242 F.3d 36, 49 (1st Cir. 2001) (same);

9  *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman*, LLC, 569 F.3d 485, 490 (D.C.

10 Cir. 2009) (claims against former bankruptcy counsel barred by order approving fee

11 applications); *In re Leisure Corp., supra*.

12      50.    The First Circuit in *Iannochino* noted that "[u]nder section 330, the

13 bankruptcy court must consider 'the nature, the extent, and the value of such services'"

14 rendered when deciding whether to authorize payment of fees for those services.  242

15 F.3d at 47, *quoting* 11 U.S.C. § 330(a)(3)(A), cited and quoted in, *In re Leisure Corp.*,

16 2007 WL 607696, slip op. at *9.  "A bankruptcy court therefore makes an implied 'finding

17 of quality and value' in the professional services provided to the [debtors] during the

18 bankruptcy." *Id.*, *quoting*, *In re Intelogic Trace, Inc.*, 200 F.3d at 387, *cited and quoted

19 in*, *In re Leisure Corp.*, 2007 WL 607696, slip op. at *9.  In these cases, the courts held

20 that because a court award of professional fees under 11 U.S.C. § 330 depends upon

21 an evaluation of the quality and value of the professional's services, a later malpractice

22 action would necessarily arise from the "same nucleus of operative facts" and therefore

23 involves the same cause of action for purposes of preclusion.  *In re Intelogic Trace, Inc.*,

24 200 F.3d at 387-388; *In re Iannochino*, 242 F.3d at 46-49, *cited and quoted in*, *In re

25 Leisure Corp.*, 2007 WL 607696, slip op. at *9.

26      51.    Here, the undisputed facts demonstrate that C & M, and those claimed

27 through it like Plaintiff, had ample opportunity to litigate the court's order approving

28 Defendants' final fee application. "Res judicata forecloses relitigation if there has been

-12-

1
2

an opportunity to litigate once, whether or not it has been availed of. . . ."  *Sherrer v.*

*Sherrer*, 334 U.S. 343, 367 (Frankfurter, J., dissenting)(citations omitted).

3
4
5
6
7
8

      52.     It makes no difference to the result that Plaintiff's claims against

Defendants based on alleged attorney malpractice are as much about Defendants'

alleged omissions as about Defendants' alleged acts.  All acts and omissions arose in

the course of Defendants' duties as attorneys for C & M, the debtor in this bankruptcy

case, and were addressed by this court's order approving Defendants' final fee

application.  *In re Intelogic Trace, Inc.,* 200 F.3d at 386-388.

9
10
11
12
13
14
15
16
17

      53.     In the fifth claim for relief, Plaintiff alleges a claim against Defendants

under the theory of a conspiracy.  "Conspiracy is not a cause of action, but a legal

doctrine that imposes liability on persons who, although not actually committing a tort

themselves, share with the immediate tortfeasors a common plan or design in its

perpetration.  By participation in a civil conspiracy, a coconspirator effectively adopts as

his or her own the torts of other coconspirators within the ambit of the conspiracy.   In

this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors."

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510-511 (1994)

(citations omitted).

18
19
20
21
22

      54.     "The elements of a civil conspiracy are '(1) the formation and operation of

the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage

resulting.'"  *Mosier v. Southern California Physicians Insurance Exchange*, 63

Cal.App.4th 1022, 1048 (1998), *citing inter alia, Doctors' Co. v. Superior Court*, 49

Cal.3rd 39, 44 (1989) (internal citations omitted).

23
24
25
26
27
28

      55.     The fifth cause of action for civil conspiracy is based upon Plaintiff's claim

that "Defendants, as attorneys for Plaintiff, owed Plaintiff a fiduciary duty to preserve

and protect Plaintiff's interests, rights and opportunities."  Complaint, ¶55.  Defendants

owed no duty of care in any respect to Plaintiff, and therefore, Defendants cannot be

held accountable on a theory of conspiracy based on actions taken on behalf of C & M.

*Doctors' Co. v. Superior Court*, 49 Cal.3d at 48; *Skarbrevik v. Cohen, England &*

1    *Whitfield*, 231 Cal.App.3d 692, 711 (1991); and *Cooper v. Equity General Insurance*
2    *Co.,* 219 Cal.App.3rd 1252, 1258-1262 (1990).

3    56.    For there to be a conspiracy, there must be more than one participant.  In
4    this instance, the parties to the alleged conspiracy in this case are the corporate law
5    firm that represented the Debtor in this Chapter 11 bankruptcy case, Defendant
6    SulmeyerKupetz, and one of its employees, Defendant Tippee.  Even though the
7    employee, Tippie, is a licensed attorney, at all times he was acting in the capacity as a
8    representative or agent of the law firm and not in his individual capacity.  As an agent
9    who owes no independent duty to the Plaintiff, a conspiracy claim against him cannot
10   lie.  "Agents and employees of a corporation cannot conspire with their corporate
11   principal or employer where they act in their official capacities on behalf of the
12   corporation and not as individuals for their individual advantage."  *Wise v. Southern*
13   *Pacific Co.*, 233 Cal.App.2d 50, 72 (1963)(citation omitted), *disapproved on other*
14   *grounds*, *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th at 510-511; *see*
15   *also*, *Gruenberg v. Aetna Insurance. Co.,* 9 Cal.3rd 566, 576 (1973).

16   57.    In the Complaint, Plaintiff seeks redress for alleged civil rights violations,
17   which are based upon 42 U.S.C. § 1983.  That statute has two essential elements:  "[A]
18   plaintiff must allege the violation of a right secured by the Constitution and laws of the
19   United States, and must show that the alleged deprivation was committed by a person
20   acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Plaintiff fails in
21   the Complaint to allege any legally cognizable right under the Constitution and the laws
22   of the United States and to allege that there was any action by Defendants under the
23   color of state law.  Her allegations were essentially that Defendants discriminated
24   against her and her two sons in representing C & M because Plaintiffs and her sons are
25   black and the parties that they were contending with are white, but without specifying
26   what acts that Defendants allegedly committed that were discriminatory.

27   58.    Prohibitions against racism are addressed in the Fourteenth Amendment
28   to the United States Constitution.  The equal protection clause of the Fourteenth

1  Amendment, however, only applies to actions by the state, or to acts of individuals

2  acting under state laws to such a significant extent that a state is deemed to have

3  become involved.  *See* 13 Cal.Jur.3rd, Constitutional Law, § 342 (online ed., February

4  2018 update), *citing inter alia*, *Los Angeles Investment Co. v. Gary*, 181 Cal. 680, 683-

5  684 (1919)(citations omitted); *see also, West v. Atkins*, 487 U.S. at 48.  This clause

6  does not however have any application to alleged discriminatory action by individuals

7  such as Defendants since the amendment only applies to state action.  *Id*.  Therefore,

8  Plaintiff's Sixth Cause of Action for racism fails to state a claim upon which relief can be

9  granted, and Defendants are entitled to summary judgment on that claim.

10       59.  The uncontroverted evidence shows that Plaintiff is not a party to any

11  agreement, oral or written with Defendants.

12       60.  To the extent Plaintiff claims that she was assigned claims of the Debtor

13  against Defendants for malpractice, such assignment was ineffectual and transferred no

14  rights to her.  A client may not assign its legal malpractice claims against its former

15  attorneys.  *Kracht v. Perrin, Gartland & Doyle*, 219 Cal.App.3d 1019, 1023 (1990);

16  *Goodley v. Wank & Wank, Inc.*, 62 Cal.App.3d 389, 393-395 (1976).

17       61.  In light of the court's determinations that the uncontroverted facts show

18  that there is no attorney-client relationship between Plaintiff and Defendants, that

19  Plaintiff may not assert the rights of C & M, a separate legal entity, which was the client

20  of Defendants and that the court's order approving Defendants' fee application in the

21  Chapter 11 bankruptcy case of C & M is *res judicata* as to any legal malpractice claim

22  against Defendants for their representation of C & M in the Chapter 11 bankruptcy case,

23  the court determines that Defendants have shown that there are no genuine issues of

24  material fact relating to Plaintiff's claims in the Complaint, and that Defendants are

25  entitled to judgment as a matter of law because as discussed herein, the uncontroverted

26  facts show that Plaintiff lacks standing to assert her claims against Defendants and that

27  Defendants have met their burden of showing that any claims asserted by Plaintiff

28  against them based on their legal representation of C & M is now barred by *res judicata*.

62.     The court determines that therefore, Defendants' motion for summary judgment should be granted on each claim in Plaintiff's complaint.  Because the court should grant Defendants' motion for summary judgment based on their defenses of Plaintiff's lack of standing and *res judicata*, the court need not rule on the other arguments raised by Defendants in their motion for summary judgment.

63.     A separate order granting Defendants' motion for summary judgment and a separate form of judgment are being filed and entered concurrently herewith.

IT IS SO ORDERED.

###

Date: February 16, 2018

_____

Robert Kwan
United States Bankruptcy Judge